**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**PATRICK ERWIN and**                          CASE NO.:
**CHRISTINA ERWIN,**

  *Plaintiffs,*

**v.**

**WELLS FARGO BANK, N.A., TRANS**
**UNION, LLC, EXPERIAN INFORMATION**
**SOLUTIONS, INC. and EQUIFAX**
**INFORMATION SERVICES, LLC,**

  *Defendants,*

_____/

## PLAINTIFFS' COMPLAINT
### JURY DEMAND

1.      Plaintiffs Patrick and Christina Erwin (hereinafter "Plaintiffs") bring this action against Defendants Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"), Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.      Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

## PARTIES

4.      Plaintiff Patrick Erwin is a natural person who, at all times relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5.      Plaintiff Christina Erwin is a natural person who, at all times relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6.      Defendant Wells Fargo is a national bank registered to conduct business in the State of Florida with a principal place of business at 420 Montgomery Street, San Francisco, CA 94163.

7.      Wells Fargo uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the three national consumer reporting agencies, Trans Union, Equifax, and Experian (collectively "credit reporting agencies" or "CRAs").

8.      These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

9.      Defendant Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the State of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

2

10.     Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

11.     Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

## STATUTORY FRAMEWORK

### THE FCRA

12.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

13.     Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." *See* 15 U.S.C. §1681(a)(1).

14.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to

secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

15.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

16.     "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b), must conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

17.     Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3),(4).

18.     The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." *See* 15 U.S.C.S. § 1681i(a)(1)(A).

19.     In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C.S. § 1681i(a)(4).

20.     If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." *See* 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

21.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. *See* 15 U.S.C. §§ 1681o, 1691n.

22.     If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. *See* 15 U.S.C. § 1681n(a).

23.     Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

      a.     credit or insurance to be used primarily for personal, family, or household purposes;

      b.     employment purposes; or

      c.     any other purpose authorized under section 1681b of this title.

*See* 15 U.S.C. § 1681a(d)(1).

24.     The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

## FACTUAL ALLEGATIONS

25.     On or about August 3, 2023, Plaintiff Christina Erwin was a victim of a common online scam where fraudster(s) posed as representative(s) of Hewlett-Packard technical support team to gain access to Plaintiffs' computer.

26.     After gaining remote control of Plaintiffs' computer, the fraudster(s) were able to access Plaintiffs' Wells Fargo accounts through online banking and steal money from Plaintiffs.

27.     Specifically, fraudster(s) transferred $50,000 from Plaintiffs' joint Prime Equity Line account to Plaintiff Christina Erwin's Wells Fargo checking account.

28.     On or about August 3, 2023, fraudster(s) were then able to withdraw $24,000 from Plaintiff Christina Erwin's checking account through Zelle and wire transfers.

29.     On or around August 7, 2023, after discovering that they were victims of a scam, Plaintiffs filed a police report and informed Wells Fargo of the fraud that had occurred.

30.     Wells Fargo, however, failed to honor portions of Plaintiffs' fraud claims and only refund Plaintiff Christina Erwin for a $1,000 fraudulent Zelle transaction on August 9, 2023 and one fraudulent wire transfer totaling $2,000 on August 16, 2023 to her checking account.

31.     On or about October 6, 2023, after submitting multiple fraud claims to Wells Fargo and realizing that Wells Fargo was not willing to assist them, Plaintiff Christina Erwin made a payment to the Prime Equity Line account to return the funds that was fraudulently transferred from the Prime Equity Line account to her checking account but were not withdrawn by the

fraudster(s) and remained in her checking account and the funds that were subsequently refunded by Wells Fargo.

32.     On or about November 29, 2023, Wells Fargo honored an additional fraud claim for a fraudulent wire transaction on Plaintiff Christina Erwin's checking account and refunded $2,044.39.

33.     However, Wells Fargo failed to refund Plaintiffs for the remaining fraudulent transactions totaling $18,955.61.

34.     Wells Fargo began reporting Plaintiffs' Prime Equity Line account with the inflated fraudulent balance to Plaintiffs' Trans Union, Equifax and Experian credit reports.

35.     Plaintiffs continued to make monthly payments on their Prime Equity Line account after their legitimate outstanding balance was paid off in or around November 2023 in order to prevent any negative credit reporting of the account.

36.     In or around March 2024, Plaintiffs began disputing the inflated fraudulent balance on their Wells Fargo Prime Equity Line account by mailing dispute letters with copies of the police report to Trans Union, Equifax and Experian with a courtesy copy of each letter also mailed to Wells Fargo.

37.     Upon information and belief, at least one of the credit reporting agencies also forwarded Plaintiffs' disputes to Wells Fargo.

38.     On or about April 26, 2024, Defendant Trans Union sent correspondence to Plaintiff Christina Erwin indicating its refusal to block the fraudulent information she was disputing.

39.     Additionally, Defendant Trans Union sent Plaintiff Christina Erwin investigation results dated May 1, 2024 indicating that it has conducted an investigation into her dispute, that it

has allegedly verified that the inflated fraudulent Wells Fargo Prime Equity Line account balance was reported accurately and that it intends to continue reporting the fraudulent information on her credit reports.

40.   On or about May 8, 2024, Defendant Equifax sent correspondence to Plaintiff Christina Erwin indicating its refusal to block the fraudulent information she was disputing.

41.   Defendants Equifax then either failed to investigate Plaintiff Christina Erwin's disputes, or if it did perform an investigation, did not provide her with the results of its investigations and continued to report the inflated fraudulent balance on the Wells Fargo Prime Equity Line account.

42.   On or about May 16, 2024, Defendant Experian sent Plaintiff Chrsitina Erwin investigation results indicating that it has conducted an investigation into her dispute, that it has allegedly verified that the inflated fraudulent Wells Fargo Prime Equity Line account balance was reported accurately and that it intends to continue reporting the fraudulent information on her credit reports.

43.   On or about April 30, 2024, Defendant Trans Union sent correspondence to Plaintiff Patrick Erwin indicating its refusal to block the fraudulent information he was disputing.

44.   Defendants Equifax and Trans Union either failed to investigate Plaintiff Patrick Erwin's disputes, or if they did perform investigations, did not provide him with the results of their investigations and continued to report the inflated fraudulent balance on the Wells Fargo Prime Equity Line account.

45.   Defendant Experian sent Plaintiff Patrick Erwin investigation results dated June 17, 2024 indicating that it has conducted an investigation into his dispute, that it has allegedly

verified that the inflated fraudulent Wells Fargo Prime Equity Line account balance was reported accurately and that it intends to continue reporting the fraudulent information on his credit reports.

46.     Defendants' derogatory and inaccurate reporting of Plaintiffs' Wells Fargo Prime Equity Line account on Plaintiffs' credit reports negatively reflects upon Plaintiffs' financial obligations, credit score and credit worthiness to existing and potential creditors.

47.     Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at \*9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at \*5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and,

*See Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

<u>**COUNT I – VIOLATIONS OF 15 U.S.C. § 1681s-2(b)**</u>
<u>**AGAINST WELLS FARGO**</u>

48.     Plaintiffs incorporate by reference paragraphs 1-8 and 12-47 as if fully stated herein.

49.     Wells Fargo is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

50.     Wells Fargo violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiffs' disputes when it failed to review all relevant information provided by the credit reporting agencies.

51.     As a result of Wells Fargo's violations of the FCRA, Plaintiffs have been damaged.

52.     Plaintiffs' damages include damages for mental and emotional distress associated with the Wells Fargo account remaining on their credit reports following their disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

53.     Wells Fargo negligently violated FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

54.     Additionally, Wells Fargo committed a willful violation of the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681n(a).

55.     Plaintiffs are entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Wells Fargo in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT II – VIOLATIONS OF 15 U.S.C. § 1681c-2**
**AGAINST TRANS UNION**

56.     Plaintiffs incorporate by reference paragraph 1-5, 9, 12-40, 43-44 and 46-47 as if fully stated herein.

57.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

58.     At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

59.     During the relevant timeframe, Trans Union received Plaintiffs' disputes which requested a block of fraudulent information associated with Plaintiffs' Wells Fargo account.

60.     Plaintiffs disputed the fraudulent information associated with Plaintiffs' Wells Fargo account on their Trans Union credit reports, identified themselves, advised Trans Union of the fraudulent information, furnished Trans Union with a copy of a police report, and requested that Trans Union block the fraudulent information.

61.     In response to their disputes, Trans Union negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

11

62.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

63.     Alternatively, Trans Union negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

64.     As a result of Trans Union's FCRA violations, Plaintiffs suffered mental and emotional distress associated with fraudulent information remaining in their credit files, damage to their reputations for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III - VIOLATIONS OF 15 U.S.C. § 1681i
### AGAINST TRANS UNION

65.     Plaintiffs incorporate by reference paragraphs 1-5, 9, 12-40, 43-44 and 46-47 as if fully stated herein.

66.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

67.     At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

68.     During the relevant time frame, Trans Union received Plaintiffs' disputes which requested that the fraudulent information associated with Plaintiffs' Wells Fargo account be removed from their credit files.

69.     Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiffs' credit files after receiving actual notice of inaccuracies contained therein.

70.     Additionally, Trans Union unreasonably relied on information provided by Wells Fargo when readily verifiable information was provided by Plaintiffs in the disputes placing Trans Union on notice that Wells Fargo's credit information was inaccurate and unreliable.

71.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

72.     Alternatively, Trans Union negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

73.     As a result of Trans Union's FCRA violations, Plaintiffs suffered mental and emotional distress associated with fraudulent information remaining in their credit files, damage to their reputations for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IV - VIOLATIONS OF 15 U.S.C. § 1681e(b)
## AGAINST TRANS UNION

74.     Plaintiffs incorporate by reference paragraphs 1-5, 9, 12-40, 43-44 and 46-47 as if fully stated herein.

75.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

76.     At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

77.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiffs.

78.     After receiving Plaintiffs' disputes, Trans Union was placed on notice of the fraudulent information associated with Plaintiffs' Wells Fargo account, yet Trans Union continues to include the fraudulent information in Plaintiffs' credit files.

79.     Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

80.     In the alternative, Trans Union negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

81.     As a result of Trans Union's FCRA violations, Plaintiffs suffered mental and emotional distress associated with fraudulent information remaining in their credit files, damage to their reputations for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V – VIOLATIONS OF 15 U.S.C. § 1681c-2
## AGAINST EQUIFAX

82.     Plaintiffs incorporate by reference paragraph 1-5, 11-37, 40-41, 44 and 46-47 as if fully stated herein.

83.     At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

84.     At all times relevant hereto, Plaintiff were each a "consumer" as provided for under the FCRA.

85.     During the relevant timeframe, Equifax received Plaintiffs' disputes which requested a block of fraudulent information associated with Plaintiffs' Wells Fargo account.

86.     Plaintiffs disputed the fraudulent information associated with Plaintiffs' Wells Fargo account on their Equifax credit reports, identified themselves, advised Equifax of the fraudulent information, furnished Equifax with a copy of a police report, and requested that Equifax block the fraudulent information.

87.     In response to his dispute, Equifax negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

88.     Equifax's acts or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

89.     Alternatively, Equifax negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

90.     As a result of Equifax's FCRA violations, Plaintiffs suffered mental and emotional distress associated with fraudulent information remaining in their credit files, damage to their reputations for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

<b><u>COUNT VI - VIOLATIONS OF 15 U.S.C. § 1681i</u></b><br><b><u>AGAINST EQUIFAX</u></b>

91.     Plaintiffs incorporate by reference paragraphs 1-5, 11-37, 40-41, 44 and 46-47 as if fully stated herein.

92.     At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

93.     At all times relevant hereto, Plaintiff were each a "consumer" as provided for under the FCRA.

94.     During the relevant time frame, Equifax received Plaintiffs' disputes which requested that the fraudulent information associated with Plaintiffs' Wells Fargo account be removed from their credit files.

95.     Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiffs' credit files after receiving actual notice of inaccuracies contained therein.

96.     Equifax's acts or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

97.     Alternatively, Equifax negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

98.     As a result of Equifax's FCRA violations, Plaintiffs suffered mental and emotional distress associated with fraudulent information remaining in their credit files, damage to their

reputations for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII - VIOLATIONS OF 15 U.S.C. § 1681e(b)
## AGAINST EQUIFAX

99.    Plaintiffs incorporate by reference paragraphs 1-5, 11-37, 40-41, 44 and 46-47 as if fully stated herein.

100.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

101.    At all times relevant hereto, Plaintiff were each a "consumer" as provided for under the FCRA.

102.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiffs.

103.    After receiving Plaintiffs' disputes, Equifax was placed on notice of the fraudulent information associated with Plaintiffs' Wells Fargo account, yet Equifax continues to include the fraudulent information in Plaintiffs' credit files.

104.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

105.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

106.     As a result of Equifax's FCRA violations, Plaintiffs suffered mental and emotional distress associated with fraudulent information remaining in their credit files, damage to their reputations for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VIII – VIOLATIONS OF 15 U.S.C. § 1681c-2
## AGAINST EXPERIAN

107.     Plaintiffs incorporate by reference paragraph 1-5, 10, 12-37, 42 and 45-47 as if fully stated herein.

108.     At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

109.     At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

110.     During the relevant timeframe, Experian received Plaintiffs' disputes which requested a block of fraudulent information associated with Plaintiffs' Wells Fargo account.

111.     Plaintiff disputed the fraudulent information associated with Plaintiffs' Wells Fargo account on their Experian credit reports, identified themselves, advised Experian of the fraudulent information, furnished Experian with a copy of a police report, and requested that Experian block the fraudulent information.

112.     In response to their disputes, Experian negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the

18

furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

113.    Experian's acts or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

114.    Alternatively, Experian negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

115.    As a result of Experian's FCRA violations, Plaintiffs suffered mental and emotional distress associated with fraudulent information remaining in their credit files, damage to their reputations for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## <u>COUNT IX - VIOLATIONS OF 15 U.S.C. § 1681i</u><br><u>AGAINST EXPERIAN</u>

116.    Plaintiffs incorporate by reference paragraphs 1-5, 10, 12-37, 42 and 45-47 as if fully stated herein.

117.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

118.    At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

119.    During the relevant time frame, Experian received Plaintiffs' disputes which requested that the fraudulent information associated with Plaintiffs' Wells Fargo account be removed from their credit files.

120.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiffs' credit files after receiving actual notice of inaccuracies contained therein.

121.    Additionally, Experian unreasonably relied on information provided by Wells Fargo when readily verifiable information was provided by Plaintiffs in the disputes placing Trans Union on notice that Wells Fargo's credit information was inaccurate and unreliable.

122.    Experian's acts or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

123.    Alternatively, Experian negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

124.    As a result of Experian's FCRA violations, Plaintiffs suffered mental and emotional distress associated with fraudulent information remaining in their credit files, damage to their reputations for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff pray this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X - VIOLATIONS OF 15 U.S.C. § 1681e(b)
## AGAINST EXPERIAN

125.     Plaintiffs incorporate by reference paragraphs 1-5, 10, 12-37, 42 and 45-47 as if fully stated herein.

126.     At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

127.     At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

128.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiffs.

129.     After receiving Plaintiffs' disputes, Experian was placed on notice of the fraudulent information associated with Plaintiffs' Wells Fargo account, yet Experian continues to include the fraudulent information in Plaintiffs' credit files.

130.     Experian's acts and/or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

131.     In the alternative, Experian negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

132.     As a result of Experian's FCRA violations, Plaintiffs suffered mental and emotional distress associated with fraudulent information remaining in their credit files, damage to their reputations for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

133.    Plaintiffs demand a trial by jury on all issues so triable.


Dated: September 13, 2024                    *Respectfully submitted*,

                                             **SHARMIN & SHARMIN, P.A.**

                                             */s/ Eiman Sharmin*
                                             Eiman Sharmin, Esq.
                                             eiman@sharminlaw.com
                                             FBN: 716391
                                             830 North Federal Highway
                                             Lake Worth, FL 33460
                                             Main: 561-655-3925
                                             Fax: (844) 921-1022
                                             *Attorneys for Plaintiff*